**PUBLISH**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-03490-REB

JODY E. FERRIER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed December 26, 2013, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that she is disabled as a result of degenerative disc disease of the lumbar spine, pain and edema of the lower extremities, and morbid obesity. After

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on May 23, 2012. At the time of the hearing, plaintiff was 32 years old. She has a college degree and past relevant work experience as a truck driver. She has not engaged in substantial gainful activity since June 29, 2009, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other alleged impairments were determined to be non-severe. The ALJ found that plaintiff had the residual functional capacity to perform a reduced range of sedentary work with certain postural, environmental, and non-exertional restrictions. Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that she could perform. She therefore found plaintiff not disabled at step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite, sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[2]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[2]  Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III.  LEGAL ANALYSIS

Plaintiff asserts that the ALJ erred in failing (1) to articulate good cause for limiting the weight she assigned to the opinion of plaintiff's treating physician; (2) to address the other medical source opinions of record; and (3) to inquire as to the apparent conflict between the description in the ***Dictionary of Occupational Titles*** of the alternative jobs identified by the vocational expert and plaintiff's residual functional capacity.  I agree on all fronts and thus remand.

Dr. Thomas Higginbotham began treating plaintiff in November 2010 for pain management following surgery in September 2009 to repair a stress fracture in her right foot.  In February 2012, Dr. Higginbotham completed a medical source statement suggesting that plaintiff could sit for a total of three hours per day, stand for one hour per day, and walk for one hour per day.  He stated that she otherwise would need to either recline with her legs elevated or lie down, and would need to change positions frequently as well.  (Tr. 620.)  The ALJ gave this opinion "limited weight" on the grounds that Dr. Higginbotham's sitting restrictions were not supported by treatment records and that his suggestion that plaintiff needed to elevate her legs appeared to be based solely on plaintiff's subjective reports.  (Tr. 23-24.)  The first of these reasons is not supported by the record, while the second is based on an improper consideration for failing to

credit a treating source opinion.[3]

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[4] In either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301; *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey*, 816 F.2d at 513.

The ALJ rejected Dr. Higginbotham's sitting restriction on the basis that it was not supported by objective medical evidence. In this regard, she cited to the results of

---

[3] This error is not harmless because the vocational expert testified that a person who is required to recline with her legs elevated for a significant portion of the day would not be able to do any of the alternative jobs identified at the hearing, or any other job. (Tr. 65-66, 67-68.) Similarly, a person who would need to lie down after working five hours of an eight-hour shift would find no competitive employment. (Tr. 69-70.)

[4] These factors include: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship; the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2).

various tests that revealed no apparent physiological cause for plaintiff's ongoing foot and ankle pain. (Tr. 23.) This argument is a red herring, however, because Dr. Higginbotham stated that the restrictions he suggested were primarily related to plaintiff's complaints of back pain. (Tr. 620.)[5] Indeed, as the ALJ herself noted, an MRI confirmed that plaintiff suffers from severe disc degeneration at L5-S1. (Tr. 24, 663-666) With respect to this impairment, the ALJ noted that "Dr. Higginbotham does not provide any specific treatment for back pain except medication refills at every visit." (Tr. 24.) As a reason for rejecting Dr. Higginbotham's opinion, this statement does not bear scrutiny because it ignores both the fact that plaintiff began treatment with Dr. Higginbotham specifically for pain management and that he expressly stated that there was little else that could be done to alleviate plaintiff's symptoms because of her recalcitrant, morbid obesity. (*See* Tr. 660, 673, 674, 677.)[6]

Moreover, it was improper for the ALJ to discredit this aspect of the opinion on the ground that it appeared to be based solely on plaintiff's subjective reports. Even where substantiated, the observation that a physician has relied on a patient's subjective reports of her symptoms provides absolutely no basis for rejecting a medical

---

[5] It is not clear to the court whether the ALJ meant to convey anything substantive as to the weight of Dr. Higginbotham's opinions by noting that he did not begin treating plaintiff for back pain until August 2011, nearly a year after he first became plaintiff's treating doctor. (Tr. 24.) Such an observation does not appear to obviously detract from the gravitas of the opinion, especially where, as here, it is substantiated by objective medical evidence.

[6] Although both Dr. Higginbotham and plaintiff's orthopedist, Dr. Mihir Patel, noted that plaintiff's pain and limitation might be alleviated if she lost weight, all efforts to effect more than marginal weight loss failed. The Commissioner has acknowledged that obesity is a complex and poorly understood phenomenon, and treatment is often unsuccessful. **Social Security Ruling 02-1p**, 2000 WL 628049 at *2 (SSA Sept. 12, 2002). Moreover, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* at *6. The ALJ's reliance on the allegedly minimal objective medical findings in this case appears to take inadequate consideration of the impact of obesity on plaintiff's functionality and, concomitantly, her subjective reports of pain and limitation.

source opinion:

> A medical finding of disability . . . includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain.  A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim.

***Nieto v. Heckler***, 750 F.2d 59, 60-61 (10th Cir. 1984); ***see also Orender v. Barnhart***, 2002 WL 1747501 at *6-7 (D. Kan. July 16, 2002).  The ALJ's own obvious disbelief of plaintiff's reports regarding her limitations provides no basis for rejecting an otherwise properly substantiated medical source opinion.  ***See McGoffin v. Barnhart***, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ may not reject treating physician opinion, *inter alia*, "due to his or her own credibility judgments").

      Moreover, the mere fact that Dr. Higginbotham never suggested such a restriction in his treatment notes does not undermine his opinion in any event.  (***See*** Tr. 24.)  Dr. Higginbotham never suggested precise limitations on plaintiff's ability to stand or walk, either, but the ALJ apparently accepted these restrictions.  Indeed, it would seem odd in the context of a regular office visit for a doctor to assess functional limitations of any sort.  Instead, Dr. Higginbotham's functional capacity opinion is like any other medical source opinion in his regard – a distillation of his observations and treatment records to suggest work-related functional limitations.[7]

---

[7] Moreover, there is ample evidence in the record to substantiate plaintiff's reports of edema of her feet and ankles, which clearly underlies the suggestion that she needs to elevate her legs.  (***See*** Tr. 313, 315, 348, 350, 352, 352, 575, 579, 617, 618, 637-638, 674.)

Not only did the ALJ thus fail to articulate good cause for rejecting Dr. Higginbotham's opinion, she also failed even to mention the opinion of plaintiff's treating orthopedist, Dr. Mihir Patel (Tr. 649), or to discuss in any detail that of the consultative examiner, Dr. Jennifer McLean (Tr. 589-594.)  This in itself constitutes error.  "The RFC assessment must always consider and address medical source opinions." **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996).

Nor is this oversight obviously harmless, as the Commissioner urges.  Dr. Patel suggested plaintiff could not sit for more than 20 minutes at one time or stand for more than 10 minutes at a time (Tr. 649), and Dr. McLean thought plaintiff would need frequent breaks, as often as every 30 minutes (Tr. 594).  These limitations are not plainly incorporated into the ALJ's residual functional capacity assessment, which, contrary to the Commissioner's argument, does not include a sit/stand option.[8]  (**See** Tr. 23.)  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." **Social Security Ruling 96-8p**, 1996 WL 374184 at *7.  No such explanation was given here, nor did the ALJ consider whether these opinions substantiated Dr. Higginbotham's opinion.  Remand therefore is warranted on this basis as well.

I also perceive reversible error at step 5 of the sequential evaluation.  The ALJ failed to inquire of the vocational expert whether his testimony regarding the potential alternative jobs identified as within plaintiff's residual functional capacity conflicted with the description of those jobs in the ***Dictionary of Occupational Titles*** ("***DOT***").  (***See***

---

[8] Further assuming that a sit/stand option is equivalent to the need to take an actual break.

Tr. 57-71.)  The Commissioner recognizes that "[o]ccupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the *DOT*."  **Social Security Ruling 00-4p**, 2000 WL 1898704 at *2 (SSA Dec. 4, 2000).  The ALJ therefore has an affirmative duty to inquire as to the existence of any such conflict on the record.  *Id.* at *4.  "When vocational evidence . . . is not consistent with information in the *DOT*, the adjudicator must resolve this conflict before relying on the . . . evidence to support a determination or decision that the individual is or is not disabled."  *Id.   See also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").  That duty was not discharged in this instance.[9]

The Commissioner tacitly concedes not only that a conflict existed, but that it was consequential.  Indeed, the ALJ's determination that plaintiff was capable of only sedentary work appears to preclude two of the three jobs identified by the vocational expert, both of which are classified as light work by the *DOT*.  Nevertheless, the Commissioner argues that the job of surveillance system monitor, which is sedentary, supports the ALJ's step 5 determination on its own.

I am unpersuaded, for at least two reasons.  First. the ALJ included within plaintiff's residual functional capacity a limitation to jobs requiring no more than one-to-

---

[9]  Although the ALJ stated that she had found the vocational expert's testimony to be consistent with the *DOT* (*see* Tr. 26), she failed to explain how she reached that conclusion, which failure also constitutes error, *see* **Social Security Ruling 00-4p**, 2000 WL 1898704 at *4 ("The adjudicator will explain in the determination or decision how he or she resolved the conflict.").

two-step instructions to account for the side effects of medication.  (*See* Tr. 23, 24.)  As plaintiff points out, such a limitation tracks precisely the language used in the *DOT* to describe jobs with a General Educational Development ("GED") Reasoning Development level of 1.[10]  Yet all three of the jobs identified by the vocational expert contemplate a reasoning level higher than this.  Thus, the Commissioner's argument that plaintiff's bachelor's degree suggests she is capable of higher level reasoning is foreclosed by the ALJ's own residual functional capacity determination.  *See also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting apparent conflict – and concomitant requirement for explanation – between Reasoning Development level 3 and a finding claimant's residual functional capacity is limited to simple instructions); *Scheibeler v. Astrue*, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009) (claimant who is limited to simple work "arguably lack[s] the mental [residual functional capacity] for jobs at or above [a Reasoning Development level 2]").

Second, even if the surveillance system monitor job clearly coincided with all the limitations of plaintiff's residual functional capacity as assessed by the ALJ, I would decline the Commissioner's invitation to determine in the first instance that this job exists in significant numbers in the national and local economies:

> Overriding the bare numbers is the procedural fact that these cases involved court review of a *finding* of numerical

---

[10]  "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective."  *Dictionary of Occupational Titles*, App. C § III: Components of the Definition Trailer http://www.occupationalinfo.org/appendxc_1.html#III (last accessed March 19, 2015).  GED is comprised of three variables – Reasoning Development, Mathematical Development, and Language Development.  *See id*.  Level 1 Reasoning Development is defined as the ability, *inter alia*, to "[a]pply commonsense understanding to carry out simple one- or two-step instructions."  *Id.*

>   significance made by the ALJ; they were not deciding in the
>   first instance that a particular number was significant under
>   the circumstances. This court has made it clear that judicial
>   line-drawing in this context is inappropriate, that the issue of
>   numerical significance entails many fact-specific
>   considerations requiring individualized evaluation, and, most
>   importantly, that the evaluation should ultimately be left to
>   the ALJ's common sense in weighing the statutory language
>   as applied to a particular claimant's factual situation.

***Allen v. Barnhart***, 357 F.3d 1140, 1144 (10th Cir. 2004) (citation and internal quotation marks omitted; emphases in original). Clearly, this issue must be addressed by the ALJ in the first instance.

## IV.  ORDERS

Accordingly, the ALJ's disability decision must be reversed and remanded.[11]

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ to

>   a. Reevaluate the treating source and any other medical opinions of record, making specific findings regarding the weight assigned to each such opinion and giving specific, legitimate reasons tied to the evidence for her determinations in that regard;
>
>   b. Recontact any treating or examining source, seek the testimony of medical or vocational experts, order consultative examinations, or

---

[11] Although plaintiff requests a directed award of benefits, I find it would not be proper to exercise my discretion in that regard in this case. ***See Nielson v. Sullivan***, 992 F.2d 1118, 1122 (10th Cir. 1993). Additionally, by this decision, I do not find or imply that plaintiff is or should be found to be disabled.

    otherwise further develop the record as she deems necessary;

    c.  Reassess plaintiff's residual functional capacity in light of the entire record;

    d.  Ensure that any conflicts between any vocational expert's testimony and the *Dictionary of Occupational Titles* as to the requirements of any alternative jobs identified by the vocational expert are fully developed on the record; and

    e.  Reassess the disability determination; and

  3.  That plaintiff is **AWARDED** her costs, to be taxed by the clerk of the court in the time and manner required by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

  Dated March 19, 2015, at Denver, Colorado.

                **BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge